875 F.2d 865
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Antonio L. LAUDAZIO, Plaintiff-Appellant,v
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant-Appellee.
 No. 88-1648.
 United States Court of Appeals, Sixth Circuit.
 May 5, 1989.
 
 Before NATHANIEL R. JONES, WELLFORD, and RALPH B. GUY, Jr., Circuit Judges.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Claimant, Antonio Laudazio, appeals from a denial of social security disability benefits. It is Laudazio's claim that he is disabled as a result of a seizure disorder. The claim was denied administratively and after a de novo hearing by an administrative law judge (ALJ). The appeals council concluded that a grant of review was not merited, thereby making the ALJ's decision the final decision of the Secretary. Upon appeal to the district court, the matter was referred to a magistrate who concluded that the Secretary's decision was supported by substantial evidence. The district judge agreed and granted summary judgment in favor of the Secretary. This appeal followed.
 
 
 2
 Upon a full review of the record and for the reasons set forth below, we conclude that this matter should be remanded for a further hearing.
 
 I.
 
 3
 There is considerable medical evidence in the record. From May 25, 1983, until September 5, 1986, the claimant consulted with and sought treatment from ten different physicians, many of whom were associated with the University of Michigan Medical Center. In addition, he had a psychological evaluation and underwent various tests, including CAT scans and EEGs. The end result of all of the examinations and tests was inconclusive, however. Laudazio was diagnosed as possibly having a seizure disorder and was treated accordingly.[1] He was put on Dilantin[2] which is usually the first drug prescribed for seizure disorders. The Dilantin did not appear to have much of an effect, and claimant complained of side effects. The therapeutic range for Dilantin is from 10 micrograms per milliliter of blood (10 mcg/ml) to 20 mcg/ml.[3] Laudazio's blood analyses always showed levels well below the therapeutic range. It is undisputed that for long periods of time Laudazio did not take the dosage prescribed. Claimant maintains, however, that he did ultimately take the Dilantin as directed and still failed to reach the appropriate blood levels.
 
 
 4
 At the hearing before the ALJ, Laudazio claimed that he met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 11.03[4] for epilepsy--minor motor seizures, and should have been declared disabled. The ALJ found the claimant was not a credible witness, however, and concluded that Laudazio failed to follow prescribed treatment and thus could not be found disabled pursuant to the section 11.03 listing.[5] Once the ALJ reached this conclusion, it followed that claimant had the residual functional capacity to perform work even though the ALJ reluctantly concluded Laudazio could not perform his past work.[6] It is quite clear from the ALJ's report that he did not believe claimant had a seizure disorder but gave him the benefit of the doubt on this issue, since claimant would be disqualified anyway due to not following prescribed treatments.
 
 
 5
 Once the basis of the ALJ's holding was learned, claimant secured new medical evidence for the purpose of supporting his claim that he was following the prescribed treatment and taking daily doses of Dilantin as directed.[7] The appeals council found this new evidence inconclusive and unpersuasive and did not review.
 
 II.
 
 6
 Although on the state of the record before us we would be inclined to find substantial evidence supports the Secretary's determination, we find it necessary to remand to the Secretary due to an issue properly raised by claimant but not addressed by the district court. Laudazio's counsel claims that, at the final hearing before the ALJ, he was told in an off-the-record, in-chambers meeting that the ALJ was going to find for claimant and that counsel need not further cross-examine witnesses or put in proofs. When an adverse decision was ultimately handed down, counsel telephoned the ALJ who allegedly said he forgot about this conversation and apologized. The ALJ followed up this telephone conversation with the following letter:
 
 Dear Mr. Dolenga:
 
 7
 I believe a written response is in order pertaining to your telephone call of yesterday and my decision on the above captioned case.
 
 
 8
 First, I must admit that at the time that I rendered my decision on this case, I did not have any recollection of the discussion that we had off-the-record. After your phone call, I played back the last part of the recording (the case was being readied for shipment to Docket and Files Branch), and it did reveal that you had asked for an off the re ord discussion.
 
 
 9
 I do remember that we went into my office and the case was discussed. I also remember that I was favorably impressed with the exhibit that you introduced at the hearing pertaining to the affidavit made by the pharmacist (Exhibit 33), who gave the claimant his daily does of Dilantin over the 30 day period. During my deliberations and reviewing the evidence of record I did vacillate between rendering a favorable and unfavorable decision. It was a very difficult case to decide. However, in the final analysis, in making my decision, I had to come to grips with the irrefutable evidence that the claimant, while under treatment by his doctors, was in non-compliance in the taking of his medication as prescribed.
 
 
 10
 It was never my intent to mislead you in anyway.
 
 
 11
 Sincerely,
 
 
 12
 /s/ George L. Carpenter
 
 Administrative Law Judge
 
 13
 (App. 15).
 
 
 14
 Although the ALJ stops short of admitting he told counsel he was going to render a favorable decision, the letter adds sufficient credence to counsel's version of what occurred to compel us to order a remand.
 
 
 15
 In order to avoid confusion and further difficulty on remand, we will order a de novo hearing. We conclude this is the best course of action because the issue of whether claimant is taking his Dilantin as directed is one that is capable of absolute resolution. Furthermore, there are inconsistencies in the original determination. There is no suggestion that claimant has simply fabricated the whole story concerning his medical problems. He has gone to some of the best doctors available, and they simply have not been able to reach a firm diagnosis. Claimant has also undergone extensive testing which is inconclusive. There appear to be unanswered questions which should be capable of definitive objective medical answers.
 
 
 16
 REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Claimant also suffers from hypertension, but this condition responds to medication and is not a claimed basis for disability
 
 
 [2]
 Dilantin is an anti-epileptic drug, indicated for the control of generalized tonic-clonic (grand mal) and complex partial psychomotor and temporal lobe seizures and prevention and treatment of seizures occurring during or following neurosurgery. The Medical Economics Co., Physicians' Desk Reference 1539-40 (43d ed. 1989)
 
 
 [3]
 Merck, Sharp & Dohme Research Laboratories, The Merck Manual 1318 (14th ed. 1982)
 
 
 [4]
 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 11.03 provides:
 
 
 [11]
 03 Epilepsy--Minor motor seizures (petit mal, psychomotor, or focal), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day
 
 
 [5]
 20 C.F.R. Sec. 404.1530 provides in pertinent part:
 (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.
 
 
 [6]
 20 C.F.R. Sec. 404.1561 reads in pertinent part: "If you can do your previous work (your usual work or other applicable past work), we will determine that you are not disabled. However, if your residual functional capacity is not enough to enable you to do any of your previous work, we must still decide if you can do any other work." The ALJ found the only restrictions on what claimant could do were no working around machines or at heights
 
 
 [7]
 The introductory section to 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 11.03, notes that: "Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption of [sic] metabolism of the drug. Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance." Id. at 11.00A